**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

ROBERT GLEN MYERS,                       )
                                         )
      Plaintiff,                      )
                                         )
    vs.                               )    Case No. 1:25-cv-0148-MTS
                                         )
MARY JANE BOURBON &                      )
CHOPHOUSE, LLC,                          )
                                         )
      Defendant.                      )

**MEMORANDUM AND ORDER**

Plaintiff Robert Glen Myers is a serial filer of actions under the Americans with Disabilities Act ("ADA").[1]  In this case, Myers sued Defendant Mary Jane Bourbon & Chophouse, LLC, which owns a restaurant located in Cape Girardeau.  Myers, who is blind, alleges that Defendant violates the ADA because its website is not compatible with his screen-reader software.  Defendant seeks dismissal of the action, which Myers opposes.  For the reasons explained herein, the Court will dismiss Plaintiff's action with prejudice.

**I.     Background**

Myers alleges he "is and has been a customer" of Defendant's.  Doc. [10] ¶ 21. He "frequently travels to the Cape Girardeau area," where Defendant's restaurant is located, for fishing trips, and he "eats at local restaurants" while he is there.  *Id.* ¶ 23.  He

---

[1] He has filed nearly fifty cases in this District alone within the last two years and has filed numerous other cases in the Western District of Missouri, where he resides.

alleges that he "will continue to travel" to the area in the future "with at least the same frequency" as he has traveled there in the past.  *Id.*

Plaintiff alleges that on numerous occasions he "attempted to utilize" Defendant's website, but he "experienced substantial access barriers" while doing so.  *Id.* ¶ 29.  He alleges that he was "attempting to browse the menu offerings [and] drinks, research the hours of operation and location information, and educate himself as to the upcoming events," all "with the intent of making a purchase" at the restaurant itself.  *Id.*  He says he wanted to view the website's information so that "he would know what to expect" at his visits.  *Id.*

After Plaintiff filed his Complaint in this action, Doc. [1], Defendant moved to dismiss, arguing Plaintiff lacked standing to bring his claim and that he failed to state a claim upon which relief can be granted, Doc. [5]; *see also* Fed. R. Civ. P. 12(b)(1), (6).  In response, Plaintiff filed an Amended Complaint as a matter of course.  Doc. [10]; *see also* Fed. R. Civ. P. 15(a)(1)(B).  Defendant then moved to dismiss the action on the same grounds, arguing Plaintiff's amendments did not cure the Complaint's defects.  Doc. [13].  Plaintiff opposes the instant Motion, Doc. [17], which is now ripe for decision.

## II.   Analysis

### a.   Standing

Defendant initially argues that Plaintiff has suffered no Article III injury in fact.  To survive this portion of Defendant's Motion to Dismiss, Plaintiff needed only to have "allege[d] sufficient factual matter, accepted as true, to support a reasonable and plausible

inference that []he satisfies the elements of Article III standing." *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023). The Court concludes that Plaintiff has met his "relatively modest" burden here. *See id.*; *see also Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 624 (7th Cir. 2017) ("At the pleading stage, it is normally not difficult to pass the standing bar.").

Plaintiff has plausibly alleged the existence of barriers to access Defendant's website and has plausibly alleged—though perhaps giving only enough facts just to squeak by—that he "would visit [the place of public accommodation] in the imminent future but for those barriers." *See Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 695 (8th Cir. 2019); *accord Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1274 (11th Cir.), *opinion vacated on reh'g on other grounds*, 21 F.4th 775 (11th Cir. 2021) (per curiam).

b. Merits

Title III of the ADA forbids discrimination against disabled individuals in public accommodations. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). To determine whether Plaintiff's pleaded facts state a claim, the Court starts where it should, with the text of Title III. *See Artola v. Garland*, 996 F.3d 840, 843 (8th Cir. 2021). It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Section 12181 provides a list of twelve types of locations that "are considered public accommodations." All twelve are physical locations, including, as relevant here, "a

restaurant, bar, or other establishment serving food or drink." *Id.* § 12181(7)(B). "[A] word is known by the company it keeps." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995); *accord Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). The plain language of Title III of the ADA indicates that places of public accommodation are limited to tangible physical locations.

While the United States Court of Appeals for the Eighth Circuit has not ruled on this issue, other courts of appeals have. *See Gil*, 993 F.3d at 1277 ("[W]e hold that websites are not a place of public accommodation under Title III of the ADA.")[2]; *id.* at 1285 n.1 (J. Pryor, J., dissenting) (noting that she was "not arguing that the website in and of itself was a place of public accommodation under the ADA"); *Weyer*, 198 F.3d at 1114 ("[A]n actual physical place is required."); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place . . . .") *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (en banc) ("[A] public accommodation is a physical place.").

Plaintiff disagrees with those courts of appeals. Though he confidently declares that "websites are places of accommodation," Doc. [17] at 16, Plaintiff provides no textual analysis to support his declaration. Rather, he encourages the Court to "fulfill the [ADA's] purpose," and warns that a decision to the contrary will "frustrate [the ADA's

---

[2] The same panel of the United States Court of Appeals for the Eleventh Circuit later vacated this opinion on rehearing because the case had become moot. *See Gil v. Winn-Dixie Stores, Inc.*, 21 F.4th 775 (11th Cir. 2021) (per curiam). Of course, the decision of the Eleventh Circuit was never binding on this Court, *see Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020), and, despite Plaintiff highlighting *Gil*'s subsequent history, it has no effect on the soundness of the original opinion's logic.

remedial goals" and would be "incompatible with the ADA's comprehensive mandate." *Id.* "But '[p]olicy considerations . . . are impermissible bases for statutory interpretation when, as here, the language of the statute is clear and unambiguous.'" *Wilson v. CTW Transp. Servs., Inc.*, 74 F.4th 924, 927 (8th Cir. 2023) (quoting *In re Hen House Interstate, Inc.*, 177 F.3d 719, 723 (8th Cir. 1999)).  That is because "[w]hen a statute is unambiguous, interpretation both begins and ends with the text."  *United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 834 (8th Cir. 2022).  After all, federal courts "do not sit to rewrite laws so that they may address more precisely the particular problems Congress had in mind."  *Block v. Meese*, 793 F.2d 1303, 1310 (D.C. Cir. 1986) (Scalia, J.).  Thus, the Court concludes that Defendant's website, in and of itself, is not a place of public accommodation under Title III.

Plaintiff argues that, even if websites themselves are not places of public accommodation, then those "with a nexus to physical locations" are such places.  *See* Doc. [17] at 16.  Plaintiff maintains that Defendant's website "certainly would be a place of accommodation under the nexus test."  *Id.* at 14–15; *see also Gomez v. Smith*, 3:21-cv-7154-RS, 2022 WL 117763, at *2 (N.D. Cal. Jan. 12, 2022) (explaining that the United States Court of Appeals for the Ninth Circuit requires, "a 'nexus' between the website and a physical location" in order "[f]or the provisions of the ADA to apply to a website").  But Plaintiff fails to explain how it "certainly" would be one.  To start with, Plaintiff has identified no textual basis for the so-called nexus test.  *See* Doc. [17] at 14–15.  Unaided by Plaintiff, this Court sees none.  Other courts likewise have failed to find one.  *See, e.g.*, *Gil*, 993 F.3d at 1281 ("[W]e decline to adopt a 'nexus' standard here, as we find no basis

for it in the statute or in our precedent."). In any event, even if the Court were to apply

the atextual nexus test here, Defendant's website does not meet it.

To see this, simply look at some of the cases Plaintiff cites in support of the nexus

test. *See* Doc. [17] at 14. Take *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir.

2019), for example. There, a blind man sued Domino's Pizza, LLC, ("Domino's")

alleging that it failed to design its website and app in a way that his screen-reading

software could read. *Robles*, 913 F.3d at 902. In a thorough opinion, the District Court,

Judge S. James Otero, granted Domino's Motion to Dismiss. 2017 WL 1330216. The

Ninth Circuit reversed. It concluded that because customers could "use the website and

app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-

store pickup," and receive "exclusive discounts," there was a sufficient "nexus" between

the website and app and Domino's restaurants. *Robles*, 913 F.3d at 903, 905. Given that

nexus, the court concluded, "the ADA applies to Domino's website and app," which must

therefore "provide the blind with effective communication and full and equal enjoyment

of its products and services." *Robles*, 913 F.3d at 904, 911.

As pleaded, Defendant's website is nothing like the Domino's website. Domino's

allowed customers to find the nearest location and order from it via the website. Besides

allowing customers the option of ordering food to pick up from the nearest store, it

allowed customers to purchase food from the store and have it delivered to them. It also

provided customers with exclusive deals that were not available elsewhere.[3] Plaintiff's

---

[3] In this way, the website also differed from Winn-Dixie Stores, Inc.'s website at issue in *Gil*,
where the Eleventh Circuit found no ADA violation even though the website was the exclusive

verbose Amended Complaint numbers thirty-one pages, but it has <u>no</u> allegations that Defendant's website can do any of those things the Domino's website could do—or anything even close to those things.

Plaintiff's allegations show only that Defendant's website is informational. *See, e.g.*, Doc. [10] ¶ 19 (describing it as "hosting comprehensive information"). The website at issue here, as Plaintiff alleges it, is static. It is a modern-day brochure. Plaintiff neither alleges that the website allows customers to purchase food nor that he even wanted or tried to purchase food from it. *See* Doc. [10] ¶ 29 (alleging that he was "attempting to browse the menu . . ., research the hours of operation and location information, and educate himself as to the upcoming events," all "with the intent of making a purchase at Defendant's Principal Place of Business"). Nothing Plaintiff pleads shows that the website has a nexus to Defendant's physical restaurant. That is, even taking all Plaintiff's well-pleaded factual allegations as true and providing him with all reasonable inferences in his favor, Defendant's website does not meet the so-called nexus test he asks the Court to apply.[4] Indeed, if this website met the nexus test, then Plaintiff's

---

way customers could "request express prescription refills or digitally link coupons to their rewards cards so that discounts could be applied seamlessly at checkout." *See Gil*, 993 F.3d at 1285 (J. Pryor, J., dissenting).

[4] The Ninth Circuit in *Robles* refrained from deciding "whether the ADA covers the websites or apps of a physical place of public accommodation where their inaccessibility does not impede access to the goods and services of a physical location," *Robles*, 913 F.3d at 905 n.6, which is the case here. Since *Robles*, courts within the Ninth Circuit have concluded that the ADA does not do so. *See Erasmus v. Ryan A. Dunlop, D.M.D., Inc.*, 1:21-cv-1236-AWI, 2022 WL 2805961, at *5 (E.D. Cal. July 18, 2022) (collecting cases of "numerous California district courts" that "found no nexus where the complaint failed to plead that web-based barriers impeded the plaintiff from accessing or ordering goods or services from a physical location").

logic would mean that the ADA also requires all advertisement signs to be tactile, all flyers and brochures to be printed in brail, and all barkers and street promoters to use American Sign Language. His logic is untenable. And all the while he has not even attempted to square it with the actual text of the ADA, a statute that "does not create a right to information." *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 11 (2023) (Thomas, J., concurring in the judgment).

In the end, Plaintiff's action fails because even if every fact he states in his Amended Complaint were true, it still shows that he has a meaningful opportunity to dine at Defendant's restaurant under similar conditions as sighted individuals. *See Argenyi v. Creighton Univ.*, 703 F.3d 441, 449 (8th Cir. 2013) (holding that "[u]nder a 'meaningful access' standard, . . . aids and services are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but they nevertheless must afford handicapped persons equal opportunity . . . to gain the same benefit" (quotations omitted)).[5] Plaintiff is no more deprived of the restaurant's goods and services than he is deprived of any business (restaurant or otherwise) that chooses not to have an informational website.

## III.   Conclusion

For all these reasons, the Court will grant Defendant's Motion to Dismiss and enter herewith an Order of Dismissal, which will dismiss this action with prejudice.

Accordingly,

---

[5] For this reason, Plaintiff also fails to state a claim as to the more specific examples of what constitutes discrimination for purposes of § 12182(a) in § 12182(b)(2)(A)(ii), (iii). *See also Gil*, 993 F.3d at 1280–81.

- 9 -

     **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Doc. [13], is **GRANTED**.

     **IT IS FURTHER ORDERED** that any motion for fees shall be filed no later than **Thursday**, **January 22, 2026**. *See* 42 U.S.C. § 12205.

     Dated this 8th day of January 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE